BONDED FREIGHTWAYS, INC., Appellant, v. EARL CODINGTON and PERRY CODINGTON, Respondents.— This is an appeal from a judgment of no cause of action and from an order denying plaintiff's motion to set aside the verdict and to grant a new trial. The action is one in negligence, and for damage to property. The plaintiff and defendants were both operating trucks. The accident occurred in the vicinity of the city of Norwich on the Norwich-Mount Upton Highway on January 14, 1939. The action was tried in the Supreme Court and the questions of negligence and contributory negligence were submitted to the jury which found a verdict of no cause of action. The appellant claims that the truck of the defendants was operated in a careless and reckless manner in total disregard of the rights of the plaintiff and the negligence of the defendants was the sole cause of the collision, and that the plaintiff, its agents, servants and employees were free from any negligence contributing to the collision herein as a matter of law. The trial court made a charge to which no exceptions were taken and submitted to the jury the following questions:

" (a) Were the defendants guilty of negligence?

" (b) Was the plaintiff, its agents, servants and employees free from contributory negligence?

" (c) Was the accident unavoidable?

" (d) What, if any, damages were sustained by the plaintiff in the particular accident in which defendants' vehicle was involved? "

The jury returned a verdict of no cause of action. Plaintiff corporation owned and operated truck-trailer units used for the hauling of gasoline and fuel oil throughout the State of New York. On January 13, unit No. 5 and unit No. 7 operated by plaintiff's employees left Albany about eight-thirty o'clock in the afternoon to transport loads of fuel oil to Norwich. Unit No. 7 weighed 44,000

pounds loaded and unit No. 5 weighed 55,000 pounds loaded. The roads were dry when the movement started but when they reached Oneonta snow commenced to fall. Neither unit had any chains on. They had made other hills without chains. There was two or three inches of snow on the road at the time of the accident. As they approached the point of the accident unit No. 5 was ahead of unit No. 7, and proceeding up a hill or grade, about 200 feet long, the wheels of unit No. 5 began to spin and the truck stalled about 100 feet from the top of the hill. The driver put on the brakes and started to get out cinders. The unit started to skid back down the hill and collided with unit No. 7 which was farther down the hill. The force was sufficient to jackknife unit No. 7 and to move the fifth wheel of unit No. 7, which is a steel plate, three-eighths of an inch thick and fastened with U bolts, forward several inches, damaging the rear bumper on unit No. 5 and causing some other damage. Unit No. 7 was jackknifed to such an extent that the drivers were able to pull it around on the hill and park it headed east, on the north side of the highway, in spite of the fact that unit No. 7 was thirty-four feet long and the road was only eighteen feet macadam with shoulder. The drivers testified they thought they could make it without chains. Unit No. 5 was alongside of the road with the front end up against the front end of unit No. 7 which unit was parked headed down the hill on its wrong side of the highway from the direction in which it was headed. It is claimed that no damage was done to the tank-trailer unit No. 7 in the first accident. The defendant who was operating a truck, which belonged to his father, was on his way to Oswego. He had left his home on the farm located a few miles from the accident and he had on a load of crushed stone. There was a little snow but no ice. He did not have any chains on his tires but had four new driving tires. As he turned onto the Norwich road at Latham's Corners, which was about three miles from the scene of the accident, he received help from the Chenango county snow plow getting up a steep, winding hill. The snow plow, after helping defendant, went on ahead for some distance at which time the defendant's truck passed the snow plow and proceeded along about fifteen miles per hour. The snow plow, after defendant passed it, proceeded along at about twelve miles per hour. It was upgrade continuously from the place where defendant passed the snow plow until he arrived at the scene of the accident in question. As he came over the knoll he saw the plaintiff's two trucks ahead of him part way up the hill. He brought his truck to a stop near a culvert which by actual measurement was 600 feet from the top of the hill. He stopped his truck on the left side of the road where it had been plowed and within a few minutes the snow plow went by him on the right hand, or north, side of the road. The plow stopped about 100 feet further on. Defendant testified he did not get out of his truck and while standing there he saw a man in the road near the plaintiff's truck making motions with his arm to come on. This is also testified to by one of the men on the snow plow and he started up the hill and was unable to make it. His wheels began to spin, he locked his brakes and slid backward, and his truck and trailer jackknifed, and the trailer went to the left, or south, side of the road and the cab of his truck came in contact with the right rear trailer wheel on plaintiff's unit No. 7. There was clearly a question of fact involved and the matter was submitted to the jury by a fair charge. The jury have found a verdict of no cause of action. There is nothing in the record that calls upon this court to substitute its judgment for that of the jury or to grant

a new trial. Judgment and order appealed from unanimously affirmed, with costs. Present — Hill, P. J., Crapser, Bliss, Schenck and Foster, JJ.